Stephen J. DRAHAUS and Margaret A. Drahaus, as Administrators of the Estate of Jonathan Eugene Drahaus f/k/a Jonathan Eugene Waller, Deceased, Appellants,

v.

STATE of Iowa, Gwen Seward Lewis, Judy Vannahme, C. Mark Chappelle, and Other Unknown Individual Defendants, Acting in Their Capacities as Employees of the State of Iowa and the Department of Human Services, Appellees.

No. 96–2027.

Supreme Court of Iowa.

Sept. 23, 1998.

Robert M. Holliday, Jill Mataya Corry, and Jason D. Walke of Sullivan & Ward, P.C., Des Moines, for appellants.

Thomas J. Miller, Attorney General, and Shirley A. Steffe, Assistant Attorney General, for appellees.

Considered by McGIVERIN, C.J., and LARSON, LAVORATO, NEUMAN, and TERNUS, JJ.

McGIVERIN, Chief Justice.

This is an appeal by the administrators of the estate of Jonathan Drahaus, from a judgment of the district court dismissing an action against the State and certain state employees under the Iowa Tort Claims Act which was brought on behalf of Jonathan Drahaus, a minor child. The district court dismissed the action because no claim was filed on Jonathan's behalf with the state ap-

peal board within two years from the date the claim accrued as required by Iowa Code section 669.13 (1993).[1] We will regard Jonathan as the plaintiff.

We affirm.

## I. Background facts and proceedings.

Jonathan Eugene Waller was born February 7, 1988. His natural parents are Joanne Taggart and Chad Meyer. Some time in December 1991, Taggart and Jonathan began living with Taggart's boyfriend.

On February 18, 1992, and again on February 27, Jonathan's maternal grandmother, Wilma Waller, contacted the Iowa Department of Human Services (hereinafter DHS or Department) voicing her suspicions that Jonathan was being physically abused. In response to her call, Waller received a written response dated February 27, 1992, from DHS employee C. Mark Chappelle, indicating that her comments concerning Jonathan's abuse had been forwarded to a district DHS worker as "additional or duplicate information to a previously initiated investigation."

On February 28, Linda Bullock, Jonathan's aunt, contacted state juvenile court officer, Gwen Lewis, and a DHS employee, Judy Vannahme, concerning Jonathan's safety and well-being. In response to her call, Bullock received a written response from DHS employee Chappelle dated February 28, indicating that the information she had provided was insufficient to suspect child abuse. No further action was taken by the DHS regarding the reports that Jonathan was the victim of child abuse.

Approximately one week later on March 5, Jonathan was admitted to Blank Children's Hospital in Des Moines. Upon examining Jonathan, medical personnel discovered multiple life-threatening injuries including massive bruising over most of Jonathan's body. The injuries were suspected to have been inflicted by the live-in boyfriend of Jonathan's mother.

The next day, March 6, the juvenile court ordered the emergency removal of Jonathan from the custody of his mother and granted temporary legal custody of Jonathan to the DHS.

On June 26, 1992, Jonathan was placed in the temporary legal custody of Margaret and Stephen Drahaus under the supervision of the DHS.[2] Jonathan's placement with the Drahauses remained under the supervision of the DHS until March 5, 1993.

On August 31, 1993, the juvenile court entered an order terminating the parental rights of Jonathan's natural parents, Joanne Taggart and Chad Meyer. The order also continued the custody of Jonathan with the Drahauses and further ordered that temporary guardianship of Jonathan be placed with the DHS for adoption placement. As of that date, the State became Jonathan's guardian.

On May 31, 1994, the district court entered an adoption decree approving the Drahauses's adoption of Jonathan. That order impliedly ended the guardianship of Jonathan by the DHS.

On August 11, 1994, the state appeal board (hereinafter appeal board) received a claim filed by Margaret Drahaus, asserting a personal injury claim on Jonathan's behalf against the State based on the Department's alleged failure to properly investigate the reports of child abuse inflicted upon Jonathan prior to March 5, 1992. The appeal board took no action with respect to the claim before Margaret Drahaus withdrew the claim on March 30, 1995.

On March 30, 1995, the Drahauses, as next friends of Jonathan, filed a petition or action in district court naming as defendants, the State of Iowa, two DHS employees and the juvenile court officer (hereinafter collectively referred to as the State), and asserting that the State was negligent in failing to properly

---

**1.** Stephen and Margaret Drahaus initiated the current action against the State on Jonathan's behalf as his adoptive parents and next friends. While this appeal was pending, Jonathan died from injuries he sustained in March 1992. As a result, we subsequently granted a motion to sub-

stitute the Drahauses, as administrators of Jonathan's estate, as appellants.

**2.** Margaret Drahaus is the sister of Joanne Taggart (Jonathan's mother) and Jonathan's maternal aunt.

investigate the alleged prior abuse of Jonathan.

The State filed a motion for summary judgment, arguing that Jonathan's suit was barred because the claim filed with the appeal board had not been filed within two years from the date the claim accrued as required by Iowa Code section 669.13.

The district court agreed and sustained the State's motion. The court concluded that the claim of alleged negligence on the part of the State accrued no later than March 17, 1992, because by that date, the Drahauses "should have known that the suspected child abuse reports regarding Jonathan had not been investigated by the DHS." The court also stated that anyone could have filed a claim with the appeal board on Jonathan's behalf anytime within two years after March 17, 1992. Because the appeal board did not receive the claim within two years from the date the claim accrued, the court concluded that Jonathan failed to properly exhaust his administrative remedies under section 669.13, a necessary condition to the district court's jurisdiction over Jonathan's tort claims suit. The court thus determined that Jonathan's suit was time barred under Iowa Code section 669.13.

On appeal, Jonathan argues that the Drahauses were legally precluded from filing the claim with the appeal board on his behalf because under rule 12 of the Iowa rules of civil procedure (1992), only the State, as Jonathan's guardian, had the authority to file the claim. Jonathan thus contends that the district court erred in sustaining the State's motion for summary judgment on the basis that the claim was not filed with the appeal board in a timely manner as required by Iowa Code section 669.13.

## II. Standard of review.

Our review of a grant or denial of summary judgment is at law. Iowa R.App. P. 4; *Gabrilson v. Flynn,* 554 N.W.2d 267, 270 (Iowa 1996). Summary judgment is only appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Iowa R. Civ. P. 237(c); *Phipps v. IASD Health Servs. Corp.,* 558 N.W.2d 198, 201 (Iowa 1997). To determine whether there is a genuine issue of material fact, the court must examine the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. Iowa R. Civ. P. 237(c). The record here consists of the pleadings, affidavits and exhibits. We review the record in the light most favorable to the party opposing summary judgment; in this sense, we consider a motion for summary judgment as we would a motion for directed verdict. *Dickerson v. Mertz,* 547 N.W.2d 208, 212 (Iowa 1996). Under this standard, summary judgment is inappropriate if reasonable minds would differ on how the issue should be resolved. *Id.*

## III. Iowa Tort Claims Act.

Iowa Code chapter 669 is Iowa's Tort Claims Act. Iowa Code § 669.1. Through enactment of the Tort Claims Act, the legislature abrogated, in part, the State's immunity from suits sounding in tort. *See Swanger v. State,* 445 N.W.2d 344, 346 (Iowa 1989). Private citizens now have the right to sue the State, "but only in the manner and to the extent to which consent has been given by the legislature." *Id.* Thus, a private citizen's right of suit under the Tort Claims Act is not absolute, but rather is limited by conditions set forth by the legislature in chapter 669.

One such condition is the two-year statute of limitations set forth in Iowa Code section 669.13. Section 669.13 states that any claim brought under the Tort Claims Act is "forever barred, unless within two years after such claim accrued, the claim is made in writing to the state appeal board under this chapter."[3] Thus, before filing a petition in district court asserting an action against the state, a claim must first be presented to the appeal board. *See In re Estate of Voss,* 553

---

3. Iowa Code section 669.13 states in relevant part:

> Every *claim* and *suit* permitted under this chapter shall be forever barred, unless within two years after such *claim* accrued, the *claim* is made in writing to the state appeal board under this chapter. The time to begin a *suit*

under this chapter shall be extended for a period of six months from the date of mailing of notice to the claimant by the state appeal board as to the final disposition of the *claim* or from the date of withdrawal of the *claim* from the state appeal board under section 669.5, if

N.W.2d 878, 880 (Iowa 1996); *Swanger*, 445 N.W.2d at 346. Upon receipt of such claim, the appeal board has authority to adjust, compromise or settle the claim. Iowa Code § 669.3. Filing a claim with the appeal board is an administrative remedy which must be exhausted before a plaintiff can pursue his or her action in district court. *Voss*, 553 N.W.2d at 880–81; *Swanger*, 445 N.W.2d at 346–47.

We have held on several occasions that exhaustion of the administrative remedy provided in section 669.13 is jurisdictional to bringing an action or suit in district court. *See Voss*, 553 N.W.2d at 880 (claim filed with the appeal board under chapter 669 must be by a person who is entitled to recover for the personal injury that is the subject of the claim); *Swanger*, 445 N.W.2d at 346; *Brumage v. Woodsmall*, 444 N.W.2d 68, 70 (Iowa 1989). Thus, failure to file a claim in a timely manner with the appeal board divests a district court of subject matter jurisdiction to hear a subsequent lawsuit asserting an action against the state. *Voss*, 553 N.W.2d at 882.

We have also held that the tolling provision for minors found in Iowa Code section 614.8 does not apply to the two-year statute of limitations under the Tort Claims Act, Iowa Code chapter 669; such tolling provision only applies to limitations periods of actions mentioned within chapter 614. *Harden v. State*, 434 N.W.2d 881, 884 (Iowa 1989).[4]

Section 669.13 also states "[t]his section is the only statute of limitations applicable to claims as defined in this chapter."

the time to begin *suit* would otherwise expire before the end of such period.

. . . .

This section is the only statute of limitations applicable to *claims* as defined in this chapter. (Emphasis added.)

4. We also held in *Harden* that refusing to apply the tolling provision in section 614.8 to a minor plaintiff's claim under the Tort Claims Act does not deprive the minor plaintiff of equal protection or due process of law. 434 N.W.2d at 885–86. In doing so, we noted that federal cases had rejected similar challenges to hold that a child's minority does not toll the running of the limitations period under the Federal Tort Claims Act. *Id.* at 886. We also noted that other states have upheld statutes of limitations for claims against

## IV. Did the trial court properly conclude that Jonathan's claim under the Tort Claims Act is time barred?

On appeal, Jonathan contends that the district court erred in concluding that his action against the State is time barred. Specifically, Jonathan argues that rule 12 of the Iowa rules of civil procedure legally precluded the Drahauses, and anyone so willing, from filing a claim with the appeal board on his behalf during the time that he was under the guardianship of the State.[5] In the alternative, Jonathan asserts that given the unique facts of this case, the district court erred in refusing to toll the statute of limitations based on equitable tolling principles.

### A. Does rule 12 of the Iowa rules of civil procedure apply to the filing of an administrative claim under the Tort Claims Act?

Rule 12 of the Iowa rules of civil procedure (1992) states:

An *action* of a minor or any person judicially adjudged incompetent *shall be brought by his guardian if he have one;* otherwise the minor may sue by a next friend, and the incompetent by a guardian appointed by the Court for that purpose. The Court may dismiss such action or substitute another guardian or friend for the ward's benefit.

(Emphasis added.)

1. *Jonathan's contentions.* In his appellate brief, Jonathan concedes that his claim

the state which do not provide for the tolling of the statutes for minors. *Id.*

In *Callahan v. State*, 464 N.W.2d 268, 273 (Iowa 1990), we held that the discovery rule applies to claims brought under the Iowa Tort Claims Act (then codified at Iowa Code chapter 25A) for purposes of determining when a claim accrues. The appellants raise no issue concerning application of the discovery rule in this appeal and thus we need not consider it here.

5. Although the district court did not address the applicability of rule 12 to the filing of an administrative claim under the Tort Claims Act in its ruling, this issue was raised in Jonathan's resistance to the State's motion for summary judgment. We will thus consider it on appeal.

accrued as of March 5, 1992, the date he was admitted to the hospital. Jonathan argues, however, that rule 12's restriction concerning a guardian's authority to file a civil action in district court likewise applies to the filing of an administrative *claim* under chapter 669. In other words, Jonathan interprets rule 12 to mean that when a minor is under a guardianship, only the guardian has the authority to file a claim required by section 669.13. Under this interpretation, Jonathan asserts that the Drahauses did not have the proper capacity to file the claim on his behalf and that it was therefore legally impossible for the Drahauses or anyone else to comply with the statute of limitations.

Based on these arguments, Jonathan asserts that the two-year statute of limitations was tolled from the date that the State became his guardian, August 31, 1993, until the date that the district court entered the adoption decree, May 31, 1994. He thus contends that he had an additional 272 days to file the claim with the appeal board. If so, then the claim filed August 11, 1994, would have been timely.

Jonathan also points out that even if the Drahauses had filed a claim on his behalf with the appeal board within two years from March 5, 1992, and the appeal board later denied the claim, then the Drahauses would have been required to turn the matter over to the State, as Jonathan's guardian, for purposes of filing an *action* in district court, pursuant to rule 12. *See* Iowa Code § 669.5 (stating that suit is permitted in district court after a written claim made to the state appeal board has been denied or withdrawn). Under this scenario, the State would have been required to file a suit against itself and Jonathan asserts that would not have happened. Jonathan thus contends that filing the claim with the appeal board, while the State was still his guardian, would have been futile if the claim later would then be turned over to the State for filing an *action* or suit.

■ 2. *Discussion.* Resolution of the issue raised in this appeal requires us to interpret the language of rule 12 as well as certain relevant provisions of Iowa Code chapter 669. In doing so, we apply the general principles of statutory construction. *See* 20 Am. Jur.2d *Courts* § 51 (1995) (courts apply principles of statutory construction when considering rules promulgated by courts); *see also Megee v. Barnes*, 160 N.W.2d 815, 817 (Iowa 1968) (rules of civil procedure have force and effect of statutes), *overruled on other grounds by Kersten Co. v. Department of Soc. Servs.*, 207 N.W.2d 117, 122 (Iowa 1973). This also means that "[w]hen the text of a statute [or rule] is plain and its meaning clear, we will not search for a meaning beyond the express terms of the statute or resort to rules of construction." *Voss*, 553 N.W.2d at 880. In such cases, we simply give effect to the statute as written. *Firstar Bank v. Hawkeye Paving Corp.*, 558 N.W.2d 423, 426 (Iowa 1997); *see also* 20 Am.Jur.2d *Courts* § 51.

■ Upon our reading of rule 12, the relevant provisions of chapter 669, and other Iowa Code provisions, we conclude that rule 12's restriction concerning who may file a civil action on behalf of a minor ward applies only to *actions* brought in district court and does not apply to the filing of a claim with the appeal board under Iowa Code chapter 669.

First, we believe that the language of rule 12 is clear and unambiguous. We thus need look no further than a plain reading of the language in rule 12 to determine that rule 12 applies only to a proceeding brought in district court and does not apply to the filing of an administrative claim. *Voss*, 553 N.W.2d at 880.

We also point out that various provisions in chapter 669 also draw a distinction between the terms *claim, action,* and *suit.* For instance, Iowa Code section 669.13 uses the phrase "[e]very *claim* and *suit*" in setting forth the applicable statute of limitations for claims brought under chapter 669.[6] (Empha-

6. Iowa Code section 669.2(3) defines a "claim" as follows:

a. Any claim against the state of Iowa for money only, on account of damage to or loss of property or on account of personal injury or

death, caused by the negligent or wrongful act or omission of any employee of the state while acting within the scope of the employee's office or employment, under circumstances where the state, if a private person, would be liable to

sis added.) Additionally, Iowa Code section 669.5 states that no *suit* shall be permitted unless the *claim* before the appeal board has been denied or withdrawn. Similarly, Iowa Code section 611.1 describes "[e]very proceeding in court [as] an action." These provisions further establish that the term *claim* as used in Iowa Code section 669.13 is not synonymous with the term *action* found in rule 12 of the Iowa rules of civil procedure.

We thus conclude that the filing of a *claim* with the appeal board is not equivalent to the filing of a civil *action* as contemplated by rule 12. Accordingly, rule 12 did not act as a legal obstacle precluding the Drahauses from filing the claim with the appeal board during the period that Jonathan was under the guardianship of the State. The Drahauses, in their capacity as Jonathan's legal custodians, thus could have filed a claim with the appeal board on Jonathan's behalf during the period when the State was Jonathan's guardian. In any event, there was nothing to prevent the Drahauses or anyone else from filing such claim *before* the State became Jonathan's guardian on August 31, 1993.

It is true that if the Drahauses had filed a claim with the appeal board on Jonathan's behalf within two years after March 5, 1992, and the appeal board later denied the claim, then the Drahauses would have been required to refer the matter to the State, as Jonathan's guardian, for purposes of filing an *action* in district court pursuant to rule 12. *See* Iowa Code § 669.5 (when suit permitted). However, those are not the facts involved in the present appeal, and we thus need not consider that scenario and the possible steps that the Drahauses in behalf of Jonathan, the State, and the court could have then taken.

the claimant for such damage, loss, injury, or death.

b. Any claim against an employee of the state for money only, on account of damage to or loss of property or on account of personal injury or death, caused by the negligent or wrongful act or omission of any employee of the state while acting within the scope of the employee's office or employment.

7. One court has defined the principle of equitable tolling as follows:

## B. Equitable tolling.

■ In addition to his argument that rule 12 precluded the Drahauses from complying with the two-year statute of limitations in section 669.13, Jonathan also asserts that the unique facts presented in this case justify a tolling of the statute of limitations based on equitable tolling principles.[7]

Based on our discussion above, we find it unnecessary to consider whether equitable tolling principles should be applied to this case. There is no dispute that the claim was not filed with the appeal board in a timely manner as required by Iowa Code section 669.13. We noted in *Harrington v. Toshiba Machine Co.*, 562 N.W.2d 190, 192 (Iowa 1997), that "the tolling of a statute of limitations is purely statutory, and we are not free to expand the concept to avoid hardships." Because there was no legal obstacle precluding the Drahauses from filing the claim on Jonathan's behalf with the appeal board within the statutorily prescribed two-year period, there is no basis for us to consider whether to toll the statute on equitable principles.

We point out that although the legislature has modified other statutes of limitation concerning actions brought by minors, it has not done so with respect to a minor's claim under the Tort Claims Act. For instance, Iowa Code section 614.8A extends the period for bringing an action for sexual abuse of a child, discovered after the injured person reaches the age of majority. The legislature has also extended the period for a minor's action under section 614.8 to one year from the age of majority for actions mentioned in Iowa Code chapter 614. We held in *Harden*, however, that this tolling provision does not apply to claims brought under our Tort Claims Act, chapter 669. 434 N.W.2d at 884.

As with other general equitable principles, application of the equitable tolling doctrine requires a balancing of the injustice to the plaintiff occasioned by the bar of his claim against the effect upon the important public interest or policy expressed by the Tort Claims Act limitations statute.

*Addison v. State*, 21 Cal.3d 313, 321, 146 Cal. Rptr. 224, 228, 578 P.2d 941 (1978); *see generally* 54 C.J.S. *Limitations of Actions* § 86, at 122 (1987).

Since our decision in *Harden*, the legislature has had ample opportunity to amend section 669.13 concerning the limitations period for claims by minors but has not done so. We consider the legislature's inaction as tacit approval of our decision in *Harden*. *Cf. Vachon v. State*, 514 N.W.2d 442, 445 (Iowa 1994) (regarding legislature's failure to amend Iowa Code section 669.13 to disallow application of discovery rule to claims brought under Tort Claims Act, as tacit approval of *Callahan v. State*, 464 N.W.2d 268, 273 (Iowa 1990) (adopting discovery rule in claims brought under chapter 669)); *accord Smith v. Iowa Liquor Control Comm'n*, 169 N.W.2d 803, 807–08 (Iowa 1969) ("Where a particular interpretation has been placed on a statute by the court, and the legislature at its subsequent meetings has left the statute materially unchanged, it is presumed that the legislature has acquiesced in that interpretation; ....") (quoting 82 C.J.S. *Statutes* § 316(a), at 549 (1953)).

We have considered other contentions raised but find no merit in them.

### V. Disposition.

We conclude that rule 12 of the Iowa rules of civil procedure does not apply to the filing of an administrative claim with the state appeal board under the Iowa Tort Claims Act. No legal obstacle prevented the Drahauses from filing the claim on behalf of plaintiff Jonathan Drahaus while the State was his guardian or at any other material times. Jonathan's claim was not filed in a timely manner with the appeal board within two years from the date his action accrued as required by Iowa Code section 669.13. Accordingly, the district court properly sustained the State's motion for summary judgment. We affirm.

**AFFIRMED.**