**In re Mary Anne DONOVAN, Debtor.**

**No. 98–1376–DH.**

United States Bankruptcy Court, S.D. Iowa.

Sept. 11, 2001.

Joel A. Deutsch, Rock Island, IL, for Debtor.

Richard A. Davidson, Lane & Waterman, Davenport, IA, for Creditor Firstar Bank.

Steven P. Wing, Dwyer & Wing, P.C., Davenport, IA, for Creditor OHP 1, L.C. and OHP 20, L.C.

## ORDER—MOTION TO AVOID TAX DEED; FINDING VIOLATION OF THE AUTOMATIC STAY

RUSSELL J. HILL, Chief Judge.

Hearing on the Motion to Avoid Tax Lien was held on March 14, 2001. Firstar Bank was represented by Attorney Richard A. Davidson; OHP 1, L.C. and OHP 20, L.C. were represented by Steven P. Wing; the Chapter 13 Trustee was represented by Elizabeth E. Goodman; and the debtor was represented by Joel A. Deutsch. At the conclusion of the hearing, the court took the matter under advisement upon a briefing schedule. Post-hearing briefs have been filed, and the court now considers the matters fully submitted.

The court has jurisdiction of these matters pursuant to 28 U.S.C. § 157(b)(1) and § 1334 and order of the United States District Court for the Southern District of Iowa pursuant to 28 U.S.C. § 157(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (K), & (O). Upon review of the pleadings, evidence, memorandums, and arguments of counsel, the court now enters its findings and conclusions pursuant to Fed. R. Bankr.P. 7052.

### FINDINGS OF FACT

1. On March 30, 1998, Mary Anne Donovan (hereinafter Debtor) filed a petition for relief under Chapter 13 of the Bankruptcy Code.

2. On Schedule A, Real Property, Debtor scheduled an interest in real estate described as "residence at 2503 W. 45th St., Davenport, IA" (hereinafter the Real Estate). Debtor valued the Real Estate at $68,000.00, and indicated that it was encumbered by a $52,000.00 secured claim.

3. Debtor claimed the Real Estate exempt as her homestead under Iowa Code § 561. She valued the exemption at $16,000.00.

4. On Schedule D, Creditors Holding Secured Claims, Debtor scheduled "The Rock Island Bank, 224 18th St., Rock Island, IL" as holding a first mortgage on the Real Estate and a secured claim for arrearages on the first mortgage for December 1997 through April 1997[sic]. Debtor valued the claims at $52,000.00 and $3,202.19, respectively.

5. Debtor did not schedule any debts owing to the Scott County Treasurer, OHP 1, or OHP 20 (hereinafter collectively OHP) for back property taxes on the Real Estate.

6. On June 10, 1998, the court entered an order confirming Debtor's amended Chapter 13 plan (hereinafter the Plan). The Plan calls for payments to the trustee of $184.45 per month for 36 months. Claims are divided into 5 classes. Class 2 is comprised of claims "secured by only real estate constituting debtor's principal residence." The only claim in this class is that of The Rock Island Bank for arrearages in mortgage payments. The Plan calls for 100% payment of this claim. Class 5 is captioned "Claims outside the Plan" and provides "Debtor's regular first mortgage payments will be paid outside the plan under debtor's monthly budget starting May 3, 1998."

7. The Plan provides for the payment of priority and secured claims, but does not expressly provide for the payment of back property taxes to the Scott County Treasurer or OHP.

8. Debtor is currently making payments to the Chapter 13 Trustee.

9. On June 19, 1997, the Scott County treasurer caused the Real Estate to be exposed to sale for unpaid taxes for 1995.

10. OHP 20 successfully bid $671.00 at the tax sale and received a tax sale certificate on June 19, 1997.

11. United Title Services, Inc. conducted a lien search of the Real Estate for OHP 20. The search revealed an unsatisfied mortgage to The Rock Island Bank, an unsatisfied assignment of rents to The Rock Island Bank, and an unsatisfied judgment and decree entered on March 17, 1998, in favor of The Rock Island Bank.

12. On May 19, 2000, OHP 20 served a Notice of Expiration of Right of Redemption on Debtor and Firstar Bank. A process server served the notice on Debtor personally. OHP 20 sent the notice to Firstar at 1600 5 Ave., Rock Island, IL. A drive-up branch office is at this location. The name, Amanda Long, appears on the certified mail delivery receipt.

13. Neither Debtor nor Firstar attempted to redeem the property.

14. On August 17, 200, the Treasurer, Scott County, Iowa, issued a tax sale deed conveying subject real Estate to OHP 20.

15. OHP 20 issued a warranty deed dated December 22, 2000, purporting to convey the Real Estate to OHP 1.

16. By a contract dated December 28, 2000, OHP 1 agreed to sell its interest in the Real Estate to Debtor for $50,100.00. Debtor agreed to make monthly principal and interest payments of $475.00. The contract has not been submitted to the court for approval, and Trustee has taken no position as to the contract.

17. When OHP's representative contacted Debtor about her interest in purchasing the Real Estate, she informed the representative of her Chapter 13 bankruptcy case.

18. On January 3, 2001, Firstar filed a Motion to Avoid Tax Deed. In its motion, Firstar states that it is the successor in interest to The Rock Island Bank. Firstar is not scheduled as a creditor and no assignment of claim in favor of Firstar appears in the case file.

### DISCUSSION

The record reveals that Debtor has a confirmed Plan that provides for the payment of mortgage arrearage to The Rock Island Bank and direct mortgage payments to the secured creditor of the Real Estate, who was, according to her schedules, The Rock Island State Bank. In December of 2000, Debtor purportedly entered into a contract to purchase the same Real Estate from OHP. OHP claims title to Real Estate through a tax deed issued by the Scott county treasurer. The contract has not been submitted to the court for approval. The record is unclear as to whether Debtor is making two monthly payments for the Real Estate, or has unilaterally substituted one creditor for another and modified her payment amount. At the time of the hearing, Debtor was current on her payments to Trustee and rapidly approaching the completion of her Plan and subsequent discharge.

The parties agree that Firstar is a successor in interest to The Rock Island Bank's claim; however, no assignment of claim appears in the file. Firstar filed the instant motion to preserve its security interest and right to payment pursuant to the mortgage agreement covering the Real Estate. Firstar argues that OHP violated the automatic stay provisions of 11 U.S.C. § 362 by obtaining the tax deed from the Scott County treasurer.

OHP objects to Firstar's motion and raises various arguments urging denial. Central to OHP's position is that Firstar lacks standing to proceed with its action.

For the following reasons, the court disagrees and finds that Firstar has standing to raise its claims.

▆▆▆ Jurisdiction by the federal courts is limited by the Constitution to actual cases and controversies. *Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir.2000). Therefore, standing to maintain an action is a threshold issue in every federal case. *McCarney v. Ford Motor Co.*, 657 F.2d 230, 233 (8th Cir.1981). Standing does not depend on the merits of the plaintiff's contentions. *Id.* Rather, it is a question of "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). To proceed in federal court, a plaintiff has the burden of proving: "(1) that he or she suffered an 'injury in fact,' (2) a causal relationship between the injury and the challenged conduct, and (3) that the injury likely will be redressed by a favorable decision." *Steger*, 228 F.3d at 892 *citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The injury asserted may exist by virtue of a statute creating a legal right. *Warth*, 422 U.S. at 500, 95 S.Ct. 2197. In such an instance, the statute provides a personal right of action, and generally, a plaintiff may not base a claim of relief on the rights of third parties. *Id.*

▆▆▆ In this case, it is clear that Firstar satisfies the constitutional requisites for standing in the federal court. Firstar alleges that OHP acquired a tax deed to the Real Estate in violation of the automatic stay. If the tax deed is valid or not voided, it extinguishes Firstar's security interest in the property. *Fergason v. Aitken*, 220 Iowa 1154, 263 N.W. 850, 851 (Iowa 1935) (the settled rule in Iowa is that where additional liens are not of equal priority with the lien of general taxes, a valid tax sale will extinguish the other liens and create a new, independent title in the purchaser). Firstar's status becomes that of an unsecured creditor, effectively resulting in the discharge of the bulk of its claim. Firstar is injured to the extent that it will no longer be entitled to mortgage payments and will not be able to proceed against the Real Estate. Said injury is unquestionably caused by OHP's acquisition of the tax deed. Finally, the court has broad equitable powers under Bankruptcy Code to fashion an appropriate remedy for violation of the automatic stay. *See Sosne v. Reinert & Duree, P.C. (In re Just Brakes Corporate Systems, Inc.)*, 108 F.3d 881, 885 (8th Cir.1997)(discussing the bankruptcy court's power to remedy violations of the stay that injure corporate debtors that cannot use § 362(h) because of the section's limitation to "individuals").

▆▆▆ Although Firstar meets the requisites for constitutional standing, OHP argues that Firstar lacks standing under various sections of the Bankruptcy Code to pursue this action. OHP contends that as a creditor, Firstar may not raise the issue of a violation of the stay. Further, OHP claims that Firstar's motion is actually an attempt to exercise a trustee's avoidance powers provided in 11 U.S.C. § 549, and Firstar lacks standing to do so. The court disagrees with OHP's analysis.

▆▆▆ The automatic stay has two purposes. It provides a debtor with a breathing spell from his or her creditors and prevents "one creditor from rushing to enforce its lien to the detriment of the other creditors." *Ahlers v. Norwest Bank of Worthington (In re Ahlers)*, 794 F.2d 388, 393–94 (8th Cir.1986) *rev'd on other grounds*, 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988). The Eighth Circuit recognized that:

> [t]he automatic stay is one of the fundamental debtor protections provided by

the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

*Id.* at 394 n. 3, *citing* H.R.Rep. No 595, 95th Cong. 1st Sess. 340, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6296–97.

The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that.

Id. at 394 n. 4, *citing* H.R.Rep. No. 595 at 340, 1978 U.S.Code Cong. & Admin.News at 6297; *see also LaBarge v. Vierkant (In re Vierkant),* 240 B.R. 317, 320 (8th Cir. BAP 1999) *and In re Scharff,* 143 B.R. 541, 542 (Bankr.S.D.Iowa 1992). Label it sword or shield, clearly, Congress intended the automatic stay to protect debtors and creditors alike. The court concludes that Firstar has standing to raise the issue of violation of the stay.

■ Further, the court finds that OHP mischaracterizes Firstar's motion as one to utilize the trustee's avoidance powers pursuant to § 549. Firstar filed a Motion to Avoid Tax Deed. In the motion Firstar argues that actions taken by OHP in acquiring the tax deed violated the automatic stay provisions of § 362. In its prayer, Firstar asked that the court declare the tax deed void. While Firstar may have commenced an adversary proceeding to

determine the validity of its lien or for a declaratory judgment as to the title of the Real Estate, *see Barnett Bank of Southeast Georgia, N.A. (In re Ring),* 178 B.R. 570, 577–78 (Bankr.S.D.Ga.1995), the court finds that it has sufficiently alleged facts to put OHP on notice that relief was sought for a violation of the automatic stay. Firstar did not rely on § 362(h) and is therefore, not disqualified because it is not an individual. *Id.* at 575–76; *see also In re Just Brakes,* 108 F.3d at 885 (holding that a plain reading of the term "individual" did not encompass a corporate debtor).

OHP relies on *City of Farmers Branch v. Pointer (In re Pointer),* 952 F.2d 82 (5th Cir.1992) for its position that Firstar attempts to exercise the trustee's avoidance powers. The court disagrees with its authority. The Fifth Circuit stands with the minority of courts that require a party to take affirmative steps to void acts taken in violation of the automatic stay. *In re Vierkant,* 240 B.R. at 322. According to that position, the court must determine who has a vested position under the Code to avoid the act. *In re Ring,* 178 B.R. at 578. However, "[t]he overwhelming majority of the circuits hold that an action in violation of the automatic stay is void...." *In re Vierkant,* 240 B.R. at 322. The acts in violation of the automatic stay have no effect and are a nullity. *In re Ring,* 178 B.R. at 578. "The lack of efficacy of the act which violates the stay is not dependent on a trustee's strong arm avoidance powers." *Id.* This court follows the Eighth Circuit Bankruptcy Appellate Panel and joins the majority of courts in holding that actions taken in violation of the automatic stay are void. *In re Vierkant,* 240 B.R. at 325. Having determined that Firstar has standing to raise the issue, the court turns to the merits of the matter.

The automatic stay provisions of the Bankruptcy Code are found in § 362. That section provides in relevant part:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title; . . .

11 U.S.C. § 362(a).

"The automatic stay is a self-executing provision of the Code and begins to operate nationwide, without notice, once a debtor files a petition for relief." *In re Scharff*, 143 B.R. at 542. Debtor filed her Chapter 13 petition on March 30, 1998. Any action taken by OHP to obtain possession of property of the estate or exercise control over property of the estate is a violation of the automatic stay. Further, any action to enforce a lien against estate property or debtor's property constitutes a violation of the automatic stay.

In Iowa, taxes on a parcel of real estate become a lien on that parcel. Iowa Code § 445.28. Each year, on the third Monday of June, the county treasurer offers all parcels with delinquent taxes at public sale. Iowa Code § 446.7. The county treasurer must first give the owners of the parcels notice of the date, time, and place of the sale, Iowa Code § 446.9, and they must give notice to the owner if a parcel was sold. Iowa Code § 446.2. After the sale, the county treasurer delivers to the purchaser at the tax sale a certificate stating a description of the parcel, the total amount due for the parcel, and that the amount has been paid. Iowa Code § 446.29.

It is well settled in Iowa, that a purchaser of land at a tax sale does not acquire right to title, possession, or an interest in land until a tax deed is issued. *City of Muscatine v. Northbrook Partnership Co.*, 619 N.W.2d 362, 366 (Iowa 2000); *Witmer v. Gibbs*, 234 Iowa 725, 13 N.W.2d 802, 804 (Iowa 1944). A tax sale certificate does not constitute an interest in land. *Patterson v. May*, 239 Iowa 602, 29 N.W.2d 547, 552 (Iowa 1947). It is a chattel, an inchoate right, a lien. *Id.; Moffitt v. Future Assurance Assoc., Inc.*, 258 Iowa 1160, 140 N.W.2d 108, 113 (Iowa 1966). The tax sale certificate is evidence of the purchaser's equitable title and lien during the time for redemption. *Id.* It entitles him to a tax deed after the requisites are met, and the time for redemption has expired. *Id.*

After one year and nine months from the date of the sale (or nine months in specific instances addressed by the Iowa Code), the purchaser may serve a notice of redemption on parties that claim an interest in the parcel described in the tax sale certificate. Iowa Code 447.9. The notice informs the parties that the right of redemption will expire in ninety days. *Id.* Notice of the expiration of redemption must be given to the titleholder, a mortgagee, and parties in actual possession of the real estate. *Id.* The purchaser must file an affidavit with the county treasurer establishing that service was completed. Iowa Code § 447.12. These actions must be completed within three years of the tax sale, or the sale is cancelled. Iowa Code § 446.37. If the property is unredeemed,

the county treasurer issues a tax deed to the purchaser. Iowa Code § 448.1.

In Iowa, the tax title is original not derivative. *Patterson v. May*, 29 N.W.2d at 552. If it is valid, it destroys the antecedent estate. *Id.* In general, the new title extinguishes all existing, inferior liens. *Witmer v. Gibbs*, 13 N.W.2d at 803.

In the present case, the Scott County Treasurer exposed Debtor's Real Estate to sale on June 19, 1997, for unpaid taxes for 1995. OHP 20 was the successful bidder and received a tax certificate for the parcel. The court finds that Scott County transferred its tax lien to OHP 20 as evidenced by the tax certificate.

After waiting the statutorily required time, OHP proceeded to take the necessary action to enforce its lien and acquire a tax deed to the Real Estate. On May 19, 2000, OHP served Debtor personally and Firstar Bank by mail with a Notice of Expiration of Right of Redemption as required by statute. When no redemption was made, OHP applied for and received a tax deed for the Real Estate.

However, in the meantime, on March 30, 1998, Debtor filed for Chapter 13 protection. A bankruptcy estate comprised of all of Debtor's property including the Real Estate formed pursuant to 11 U.S.C. § 541. At the same time, the automatic stay sprang into existence.

The court finds that in taking those actions to acquire a tax deed, OHP was enforcing its lien. Because Debtor scheduled the Real Estate as exempt and indicated equity in the property, the court additionally finds that OHP was attempting to take possession and exert control over property of the bankruptcy estate and Debtor's property. Such actions constitute a violation of the automatic stay. *See* 11 U.S.C. 362(a)(3), (4), & (5). As

stated above, actions taken in violation of the stay are void. *In re Vierkant*, 240 B.R. at 325.

OHP admits the general rule, but maintains that the Bankruptcy Code and equitable principle provide exceptions rule. OHP first argues that § 542 provides such an exception. Section 542 provides that an entity without knowledge of the bankruptcy case may transfer property of the estate to an entity other than the trustee, "with the same effect *as to the entity making such transfer*" as if the bankruptcy had never commenced. 11 U.S.C. § 542(c)(italics added).

By its plain language, § 542(c) protects only parties holding estate property at the commencement of the case from liability for transferring the property in good faith. It does not protect transferees receiving the estate property. *Smith v. First of America Bank—Michigan, N.A. (In re Smith)*, 86 B.R. 92, 96 n. 1 (W.D.Mich. 1988) *rev'd in part*, 876 F.2d 524 (6th Cir.1989)(reversed as to assessment of costs).

OHP additionally argues that an equitable exception exists whereby an entity acting in good faith may violate the stay without its actions being void. *See In re Smith Corset Shops, Inc.*, 696 F.2d 971 (1st Cir.1982) *and Matthews v. Rosene*, 739 F.2d 249 (7th Cir.1984). This court has found no Eighth Circuit decision citing either case with approval. Courts within the circuit have recognized that offending parties may request retroactive relief or annulment of the stay under § 362(d) in order to validate a void action. *See In re Vierkant*, 240 B.R. at 325 *and Wilson v. Carter (In re Carter)*, 240 B.R. 767, 769 (Bankr.W.D.Mo.1999). The burden is on the offending party to request the annulment, however, such relief should be

granted "sparingly and only under compelling circumstances." *Id.*

■ OHP did not file a motion for annulment of the stay, rather it chose to raise the issue as a defense to Firstar's motion. Regardless of the method of presentation, the court does not find the circumstances in this case sufficiently compelling to grant retroactive relief from the stay. First, the court disagrees with OHP's characterization of Debtor and Firstar's actions as "stealthily silent." Debtor was more careless that stealthily silent. *Cf. Smith v. First America Bank N.A.*, 876 F.2d 524, 526 (6th Cir.1989) (debtor's notice of bankruptcy filing sent by regular mail that arrived too late to prevent creditor's sale of property was careless, not a willful omission). Debtor scheduled neither Scott County nor OHP as creditors holding tax claims. Presumably, Debtor received notice of the claims. However, it is not at all unusual for a debtor to inadvertently fail to schedule a creditor, especially when the debt is three years old. Further, if Debtor planned to gain some undue advantage by not scheduling the debt, the plan was a poor one. It resulted in her agreeing, under the Plan and the contract to OHP, to make separate payments to different parties for the same property. The court does not find a willful omission or fraudulent intent on the part of Debtor. Rather, it finds that she was attempting to retain her home.

Likewise the court does not find any misconduct on the part of Firstar. Firstar proceeded to defend its interest in the Real Estate in a court of proper jurisdiction. Although the motion was filed over six months after OHP sent its Notice of Expiration of Right of Redemption, the court does not find the motion to be untimely because the method of notice was questionable.

OHP is not without some responsibility in creating this situation. At the hearing, evidence was presented that OHP sent the notice to a branch office of Firstar. In Iowa, legal notice is made pursuant to Iowa R. of Civ. P. 56.1. It provides in relevant part:

Original notices are "served" by delivering a copy to the proper person. Personal service may be made as follows:

\* \* \*

(f) Upon a partnership, or an association suable under a common name, or a corporation, by serving any present or acting or last known officer thereof, or any general or managing agent, or any agent or person now authorized by appointment or by law to receive service of original notice, or on the general partner of a partnership.

IA R. Civ. P. 56.1

The name, Amanda Long, appears on the certified mail delivery receipt. Nothing indicates that Amanda Long is a present, acting, or former officer of Firstar. Further, Firstar disputes that the person was authorized by law or appointment to accept service of legal documents. This appears to be a situation where an employee signed for a letter mailed to the bank at that address. The court finds that the notice was not mailed to the proper party and therefore, service was not adequate. The court also notes that Iowa courts have held that improper notice is grounds for invalidating a tax deed. *See Nelson v. Forbes*, 545 N.W.2d 576 (Iowa Ct.App. 1996) *citing Pendergast v. Davenport*, 375 N.W.2d 684, 691 (Iowa 1985) *and Modern Heat & Power Co. v. Bishop Steamotor Corp.*, 239 Iowa 1267, 34 N.W.2d 581, 586 (Iowa 1948).

Also of concern is the fact that OHP was aware that the mortgage on the Real Estate had been foreclosed. OHP retained

United Title Services, Inc. to do a lien search on the Real Estate. A report dated April 13, 2000, indicated an unsatisfied mortgage to The Rock Island Bank. It also showed a judgment decree entered on March 17, 1998, in favor of the Rock Island Bank, and indicated that the judgment was unsatisfied. The report contains no indication of a sheriff's sale of the property. As an entity that holds itself out as experienced in real estate matters and conversant with bankruptcy law, OHP should have questioned why the judgment was not executed against the property. A simple query of Debtor's name, as recited on the report, with the bankruptcy court would have divulged the Chapter 13 case, and afforded OHP the opportunity to participate in the case if it so chose. Consequently, the court finds that OHP was on notice that further inquiry was necessary.

For all the foregoing reasons, Firstar's motion will be granted. The court concludes that the Scott County tax deed was issued in violation of the automatic stay and is void and conveyed no legal or equitable title to OHP 20, L.C. Therefore, the deed issued by OHP 20, L.C. to OHP 1, L.C. conveyed no title.

■■■ The parties agree that in the event the tax deed is void, the proper remedy is to return the parties to the place each occupied prior to the violation of the stay. However, they disagree to the actual scope of the remedy.

Firstar believes that it is sufficient that OHP retain its lien. OHP will then be entitled to receive the amount paid for the 1995 taxes plus the statutory interest provided by Iowa Code § 447.1 when Firstar redeems the property. OHP believes that it is additionally entitled to receive compensation for the expenses including costs and attorney fees that it incurred in acquiring the tax deed and defending the present action.

The court agrees that the tax paid and statutory interest are available to OHP upon redemption. Further, OHP is entitled to any additional taxes that it paid on the property from the time it received the tax certificate until the present. However, this court has made it quite clear that attorney fees and costs must be specifically documented in order to be awarded. *In re Pothoven*, 84 B.R. 579 (Bankr.S.D.Iowa 1988); *In re Karas*, No. 91–2890–CH (Bankr.S.D.Iowa April 28, 1992)(Judge Hill decision # 221). A notation of time spent or cost incurred without a description of the purpose of the task will not suffice. *Id.*

OHP offered a summation of time expended and costs incurred, but did not include an explanation for the items. The court cannot discern from the exhibit the tasks performed. Further, some dates are for work performed after the present motion was filed raising the possibly that the work performed was in conjunction with the motion. It would be inappropriate to award fees incurred for work done in resisting the motion. Therefore, the court finds that OHP's compensation should be limited to the all the taxes paid on the Real Estate and the statutory interest thereon.

### *ORDER*

IT IS ACCORDINGLY ORDERED as follows:

1. The OHP 20, L.C. is found to be in violation of the automatic stay by attempting to serve the Notice of Expiration of Right of Redemption and acquiring a tax deed to Debtor Mary Anne Donovan's residence located at 2503 W. 45th St., Davenport, IA.

2. The tax deed to the above property issued to OHP 20, L.C. by the Scott Coun-

ty treasurer is void and conveys no legal title or equitable title.

3. The tax sale certificate issued to by the Scott County treasurer is reinstated.

4. Cause exists for the lifting of the automatic stay to allow redemption of the above property or to allow OHP to acquire a valid tax deed. The automatic stay is so lifted to allow OHP 20, L.C. to proceed against the property.

5. OHP 20, L.C. is granted thirty (30) days from this order to serve Notices of Expiration of Right of Redemption on Mary Anne Donovan, Firstar Bank N.A., and any other parties entitled to notice pursuant to the Iowa Code. Said notices will comply with Iowa Rule of Civil Procedure 56.1.

6. Within twenty (20) days, Firstar Bank, N.A. shall file an assignment of claim or other documentation proving entitlement to the claim filed by The Rock Island Bank.

7. The court will retain jurisdiction over these matters until their final resolution.